## Sipple v. Pennington.

(Decided June 16, 1925.)

### Appeal from Laurel Circuit Court.

1. Evidence—Written Agreement to Return Same Number of Shares of Stock Borrowed Held Controlling, in Absence of Fraud or Mistake in Contract.—Written agreement to return same number of shares of stock borrowed held controlling over oral understanding, in absence of fraud or mistake in contract.

2. Bailment—Borrower of Shares of Stock Agreeing to Return Same Number of Shares was Not Required to Return Identical Shares Borrowed.—Borrower of shares of stock, who agreed to return same number of shares was not required to return identical shares borrowed.

3. Bailment—Liability of Party Refusing to Return Within Reasonable Time After Demand Number of Shares of Stock Borrowed Stated.—A party who borrows shares of stock under an agreement to return same number when notified to do so by the lender, and fails to return the shares within a reasonable time after demand, is liable to lender for fair market value of shares at time they should have been returned after notice to return them.

C. C. WILLIAMS and FINLEY HAMILTON for appellant.

HAZELWOOD & JOHNSON for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

Dr. H. V. Pennington brought this action against
C. J. Sipple to recover for twenty shares of the capital
stock of the Laurel Oil & Gas Company belonging to him
and converted by Sipple to his own use. On the trial of
the case judgment was rendered in favor of the plaintiff.
The defendant appeals.

Dr. Pennington's testimony put in narrative form is
in brief as follows:

"I went to Sipple on the 31st of October and
said I could get $55.00 per share for this stock and
asked his advice about selling it and he said 'don't
sell it, hold on to it. I am going to hold mine.' He
says, 'I will tell you what to do, loan it to me for a
day or two. I will hand it back to you.' I never
suspected that he was going to sell them for several
months afterwards, or that he had sold them. Some
time after he borrowed the stock I called on him
for it, thought he had forgotten to return it and he
says, 'it is in my office in my safe, I will hand it to
you.' We went along for several months more and I
called on him again with a similar answer. Later
on I called on him the third time and he says, 'I
gave you that stock, did I not,' and I said 'no, you
did not,' and he says 'I thought I had' and says
'I will get it for you.' And it went on for some time
and I did not get it."

The testimony of C. J. Sipple is in these words:

"I was here in London and I was owner of a
good many shares of stock in the Laurel company.
owned around 170 shares at that time and I was
selling some of the stock. It is a good policy with an
oil company to keep a live open market for the stock
and I had a call for 20 shares of the stock from the
Kentucky Oil Exchange and I said to doctor, 'I
have a call for 20 shares of stock and I have nothing
but a big certificate and you have 20 shares and I
want you to loan them to me. I want to sell them
and I will have some of my big certificate cancelled
and give them back to you in a week or so,' and we
went to his office and I said for him to sign it in a
legal way and he did it and I took the stock to Lex-
ington, or mailed it, because it was a rush order to

the Kentucky Oil Exchange, and I sold it. That record there shows what it was sold for. I disremember the exact amount. I came back home and met doctor and he asked me about how the oil business was getting along, as he always did and some little while after that—15 days or a month—I said to Doc., 'I signed a fellow's note for $6,000.00 and I put a big stock certificate back of it and if you are in no hurry I think I will have to pay the note and I may have to use the 20 shares and would like for you to wait for a while on them,' and he said that it was all right."

It is agreed by the parties that Dr. Pennington at the time he delivered the certificate to Sipple by written endorsement, duly signed in the usual way transferred them to him in writing. It is further agreed that when he so delivered the certificate Sipple delivered to him the following written evidence of the contract:

"October 31, 1919. Received of Dr. H. V. Pennington, 20 shares Laurel Oil & Gas Company stock, borrowed, and which I will pay back to him in a week or so, same number of shares. C. J. Sipple."

It is further agreed between the parties that while the stock was still in Sipple's hands, on December 5, 1920, Dr. Pennington wrote Sipple the following letter:

"Mr. C. J. Sipple,
Phoenix Hotel,
Lexington.

"My Dear Clarence:—

"I spoke to you last week about selling my Laurel stock, I may want it sold if the Texas well does not show up beter and you just keep my shares in your name until I notify you. I will ride mine through if you keep yours. I acted largely on your judgment and want you to protect my interest. I made a mistake by selling my original shares too cheap, so advise me as a friend, I am,

Sincerely yours,

(Signed) H. V. Pennington."

The written contract is not an agreement to return the 20 shares which Sipple received. It is a contract to return "same number of shares." There is neither allegation nor proof of fraud or mistake in the contract.

The writing must therefore control. Sipple was not bound to return to Dr. Pennington the identical shares he received, but was only bound to return to him the same number of shares. The letter written more than a year afterwards is conclusive that Dr. Pennington so understood the contract. For in that letter he says: "You just keep my shares in your name until I notify you, I will ride mine through if you will keep yours."

Under the admitted facts Dr. Pennington cannot complain that Sipple kept the shares in his name, until he notified him otherwise, after the date of that letter, for that letter was a consent to all that had gone before. It does not definitely appear that Dr. Pennington made any demand on Sipple for the 20 shares after the writing of that letter. If on another trial there should be such evidence and it should be shown that Sipple did not return the shares in a reasonable time after such demand, then Sipple is liable to Pennington for the fair market value of the shares at the time they should have been returned to Pennington after notice to do so. These are the only questions to be submitted to the jury. The instructions of the court to the jury did not present the law of the case as above indicated.

On another trial the court will exclude from the jury all the testimony of Dr. Pennington relating to what Miss Webb, Dr. Mann or other persons told him not in the presence of Sipple.

Judgment reversed and cause remanded for a new trial and further proceedings consistent herewith.